UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 5:03-CR-102-KSF |
| | ) | No. 6:08-CV-7033-KSF |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| TERRY E. ADKINS, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

*** *** *** ***

On October 23, 2008,[1] Defendant, Terry E. Adkins, filed a *pro se*[2] motion under 28 U.S.C. § 2255. DE # 148 (Motion to Vacate). Subsequently, Adkins filed a motion to amend and to supplement his initial § 2255 motion. DE #151 (Consolidated Motion). Magistrate Judge James B. Todd granted the motion to amend and ordered the United States to respond. DE #153 (Memorandum Order). The United States responded in opposition, DE #160 (Response), and Defendant filed a reply brief, DE #162 (Reply). The undersigned ordered the United States to file additional briefing. DE #172 (Order). The United States filed a second response, DE #173 (Response), and Defendant filed a sur reply, DE #177 (Sur Reply). The matter is now fully briefed and ripe for consideration.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Adkins affirmed under penalty of perjury that he executed the Motion on October 23, 2008. DE #148 (Motion to Vacate) at 13.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

The District assigned the matter to the undersigned for a recommended disposition.  For the reasons discussed below, the Court **RECOMMENDS** that the District Court fully **DENY** Adkins's requested § 2255 relief and grant no Certificate of Appealability.

**I. Background Information**

On August 7, 2003, a federal grand jury returned an indictment charging Defendant with violations of 18 U.S.C. § 2252(b)(1) (one count of conspiracy to possess visual depictions of minors engaged in sexually explicit conduct), § 2252(a)(2) (ninety-nine counts of receiving visual depictions of minors engaged in sexually explicit conduct), and § 2252(a)(4)(B) (one count of possession of matters containing visual depictions of minors engaged in sexually explicit conduct).[3] DE #8 (Indictment). The indictment also included one criminal forfeiture count.  *Id.*  Per the indictment, the charged conduct occurred between September 7, 2002, and July 14, 2003, in Jessamine County.  *Id.*

Adkins pleaded not guilty to all charges listed in the Indictment.  DE #13 (Minute Entry). Subsequently, Defendant, through counsel, filed a motion to suppress, challenging the search warrants issued in this matter and evidence seized pursuant to the warrants. DE #25 (Motion). District Judge Karl S. Forester held a motions hearing, DE #36 (Order), and ultimately denied

---

[3] Adkins's wife, Jane M. Adkins, was also indicted and tried for the same offenses in *United States v. Jane M. Adkins*, 5:03-103–KSF-1. Mrs. Adkins was found guilty after a bench trial, DE #52 (Minute Entry), and sentenced to a total of 365 months imprisonment, DE #71 (Judgment). The Sixth Circuit affirmed her conviction but remanded for resentencing under *United States v. Booker*, 125 S. Ct. 738 (2005). *United States v. Adkins*, 169 Fed. App'x 961 (6th Cir. 2006). The District Judge resentenced Ms. Adkins to the same sentence. DE #92 (Amended Judgment). Ms. Adkins filed but then voluntarily dismissed her appeal to the Sixth Circuit. DE ##93, 94 (Notice of Appeal, Order of USCA).

the motion to suppress as to two of the three subject searches.[4] DE #38 (Opinion & Order). Upon

waiver, Adkins proceeded to a bench trial.

District Judge Forester conducted the bench trial and found Movant guilty as to all

counts. DE #49 (Minute Entry). The Court sentenced Adkins to 900 months in prison. DE #99

(Judgment). The Sixth Circuit Court of Appeals affirmed Adkins's conviction, *United States v.*

*Adkins*, 169 Fed. App'x 961 (6th Cir. 2006), but remanded the case for resentencing under

*United States v. Booker*, 125 S. Ct. 738 (2005). The District Judge resentenced Adkins to the

same sentence, DE #121 (Amended Judgment), and the Sixth Circuit affirmed on November 2,

2007. DE #134 (Order). Movant filed his first Motion to Vacate under 28 U.S.C. § 2255 on

August 13, 2008, DE #138 (Motion), which the Court subsequently dismissed without prejudice

at Movant's request. DE #142 (Order). Adkins refiled his Motion on October 23, 2008, DE #148

(Motion to Vacate), and then moved to amend and supplement his Motion on October 10, 2009.

DE #151 (Consolidated Motion). The Court granted Movant's Motion to Amend. DE #153

(Memorandum Order). The United States responded, DE #160 (Response), and Petition replied,

DE #162 (Reply). The Court ordered additional briefing; the United States filed a second

response, DE #173 (Response), and Adkins filed a sur reply, DE #177 (Sur Reply).

**II. Standard of Review**

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence

violates the Constitution or federal law, the federal court lacked jurisdiction to impose such

sentence, or the sentence exceeds the maximum authorized by law.  *See* 28 U.S.C. § 2255(a);

*Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a §

---

[4] Judge Forester denied Defendant's request for a *Franks* hearing, denying also Adkins's motion
to suppress evidence seized from a search of his home and vehicle. DE #38 (Opinion and Order).
The District Court granted Adkins's motion to suppress as to a search of his physical
characteristics. *Id.*

2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'") (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).   A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief.   *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).   When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process."   *See United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471  (1962)); *see also Watson*, 165 F.3d at 488.   In making a section 2255 motion, movant bears the burden of proving his or her contentions by a preponderance of the evidence. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## IV. Analysis

In his § 2255 motion, Defendant premises relief on allegations of ineffective assistance of counsel (at the trial, appellate, and resentencing levels) and improper sentencing. DE ##148, 151 (Motion to Vacate, Consolidated Motion).   Based on the record, Adkins has not proven, by a preponderance of the evidence, a right to *Strickland* relief.   Furthermore, Defendant procedurally defaulted the due process, equal protection, and judicial bias claims. Thus, Defendant is not entitled to relief under 28 U.S.C. § 2255.

4

<u>A. Procedural Default</u>

A § 2255 motion cannot substitute for a direct appeal. *Capaldi v. Pontesso*, 135 F.3d 1122, 1124 (6th Cir. 1998) ("An application under § 2255 . . . should not be considered a substitute for direct appeal."); *Sunal v. Large*, 67 S. Ct. 1588, 1590 (1947) ("[T]he general rule is that the writ of habeas corpus will not be allowed to do service for an appeal.").  To assert a claim not raised on direct review, a defendant ordinarily must show cause for the default and prejudice.[5]  *See Bousley v. United States*, 118 S. Ct. 1604, 1611 (1998); *United States v. Frady*, 102 S. Ct. 1584, 1594 (1982); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). Additionally, "[i]f claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available" subject to an analysis under *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

*1. Equal Protection Claim*

Adkins's Motion states an equal protection claim as the first proposed ground of relief. DE #148 (Motion to Vacate) at 4. Adkins argues that he received an unfair sentence as compared to similarly situated defendants, notably his co-defendant: Movant received a seventy-five year sentence and the co-defendant, his wife Jane Adkins, received a thirty year sentence. In further support of his motion, Adkins identifies three other cases as comparators and claims they identify an unwarranted discrepancy in his sentence. DE #148-2 (Brief) at 4. The heart of Defendant's argument vis-à-vis the cited cases is that his conduct was less or only comparably egregious and, yet, he received a greater sentence than the cited defendants.

---

[5] Proof of actual innocence also permits review of a claim not raised on direct appeal. *Bousley*, 118 S. Ct. at 1611.

Adkins procedurally defaulted his claim. The Motion admits that Adkins did not raise the equal protection claim on either direct appeal. DE #148 (Motion to Vacate) at 4 ("Constitutional issues best raised in Habeas Corpus Petition.").  A motion for § 2255 relief cannot substitute for a direct appeal, and Adkins does not show cause for his default, nor does he argue actual innocence. In fact, Adkins's Brief provides that his claim "is in no way trying to minimize the seriousness of [his] crimes, nor his involvement in [his] modern day deviant activity on the internet." DE #148-2 (Brief) at 4.

Regardless of the procedural default, Adkins's claim still fails. The Motion claims both sentencing disparities between Adkins and similarly situated defendants and gender bias between himself and his co-defendant. However, Adkins does not meet his burden of proof with respect to either claim. "Absent concrete evidence that a disparity in sentences can be explained only by discrimination based upon impermissible factors," sentences within the statutory limits are generally not subject to review. *United States v. McMillon*, 89 F. App'x 561, 564 (6th Cir. 2004). Thus, Adkins must prove unconstitutional discrimination.

Adkins's cherry-picking of three cases that he alleges show an unwarranted disparity in his case does not suffice to make an equal protection claim. Absent demonstrating a fundamental right or suspect class, Adkins must prove that the government intentionally treated him differently from other similarly situated individuals without any rational basis. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The District Court found that "[a] long sentence is needed to promote respect for the law, and it is needed to provide just punishment. . . . [T]he public needs to be protected from Mr. Adkins." DE #128 (Resentencing Transcript).

These findings are supported by the entirety of the sentencing transcripts, DE ##107, 128 (Sentencing and Resentencing Transcripts), which reflect the high level of scrutiny given to

sentencing considerations. Major Jack Banks, chief of detectives for the Boone County Sheriff's Department, testified at great length about the statements of Adkins's co-defendant, Jane Adkins, and detailed her accounts of molestations by the couple. DE #107 (Sentencing Transcript) at 15-55. Christopher Love, a detective with the Nicholasville Police Department, testified about the state charges brought against Mr. Adkins in Jessamine County, Kentucky. *Id.* at 56-62. The Presentence Investigation Report contained a detailed Offense Conduct section, DE #100 (Presentence Investigation Report), and the Court also heard argument from both sides. In sentencing Adkins, the Court professed "compassion" for him but also found him to be a "prolific child molester." DE #107 (Sentencing Transcript). The Court further found the case to be "exceptional," warranting an upward departure of two levels. *Id.* These findings and statements were adopted at resentencing. DE #128 (Resentencing Transcript) at 12. Adkins does not establish the basic elements of an equal protection claim, and his claim clearly fails. A cursory reference to a few other cases hardly approaches an equal protection problem here.

Further, Movant's conclusory allegations of gender bias are insufficient to establish an equal protection claim. The Court found reason for, and the record supports, the discrepancy in sentence between Mr. and Mrs. Adkins. Mrs. Adkins is of low-average intelligence, and the Court found her to be particularly influenced by her husband. DE #107 (Sentencing Transcript) at 92. Terry Adkins was a leader, and Jane Adkins was a follower. The differences in sentence are attributable entirely to the difference in role and background, and Movant fails to present an actionable equal protection violation.

*2. Due Process Claim*

Adkins's second alleged ground for requested relief argues that he was not allowed to confront accusers about allegations used to determine his sentence, that his sentence was a result

of unproven allegations and facts, and that these errors subsequently violated his right to due process. DE #148 (Motion to Vacate) at 5. Movant first argues that he was not allowed to confront or cross-examine the witnesses who testified against him at sentencing. DE #148-2 (Brief) at 7. Further, Adkins argues that the Court considered hearsay statements in calculating his sentence.

Adkins procedurally defaulted his claim. Again, the Motion admits that Movant did not raise the claim on direct appeal, DE #148 (Motion to Vacate) ("Constitutional issues best raised in Habeas Corpus Petitions."), and a § 2255 motion is not a substitute for a direct appeal. Further, Adkins does not argue adequate cause for his default and prejudice, nor does he contend actual innocence.

However, even if Adkins had not defaulted his claim, he is not entitled to relief.[6] Testimonial hearsay is admissible at sentencing proceedings, and its admission "does not affect a defendant's right to confrontation at sentencing." *United States v. Paull*, 551 F.3d 516 (6th Cir. 2009) (citation omitted); *United States v. Silverman*, 976 F.2d 1502 (6th Cir. 1992) ("In short, confrontation rights do not apply in sentencing hearings as at a trial on the question of guilt or innocence."). Adkins did not have a constitutional right to confront or cross-examine the individuals who provided declarations at his sentencing. *United States v. Pugh*, 405 F.3d 390 (6th Cir. 2005), the case Movant cites in his Consolidated Motion, does not support his arguments. *Pugh*'s holding concerned a defendant's trial rights, not sentencing rights. As Adkins's arguments solely concern his right to confront and cross-examine sentencing witnesses, he has no grounds for relief.

---

[6] Adkins conceded that *Paull* forecloses this argument under current law. *See* DE #162 (Reply) at 11.

With respect to Adkins's hearsay arguments, a sentencing judge may consider any information, even if inadmissible at trial, so long as it has "sufficient indicia of reliability to support its probable accuracy." *Silverman*, 976 F.2d at 1504 (citation omitted). Although some of the matters Major Jack Banks and Christopher Love testified about at sentencing would have been inadmissible at trial, the Court was free to consider their statements in calculating sentence so long as it found them adequately accurate.

Prior to sentencing, Adkins objected to the Presentence Investigation Report, arguing, in part, that the enhancement for pattern of activity involving the sexual abuse or exploitation of a minor was based on unreliable information. DE #100 (Presentence Investigation Report). USPO Gregory N. Coomes's response provided that he had no reason to believe the information contained in the Offense Conduct section of the Report was unreliable and not at least accurate to the level of "probable." *Id.* The Court overruled this and other defense objections, granting the government's motion for an upward departure. DE #98 (Order). At sentencing, the Court carefully considered the testimony, specifically asking the United States to indentify the corroboration. DE #107 (Sentencing Transcript) at 67. Eventually, the Court concluded that Mrs. Adkins's statements were inconsistent yet reliable and supported by numerous corroborating sources. DE #107 (Sentencing Transcript) at 81-82. The Sixth Circuit affirmed Movant's sentence, specifically finding the statements sufficiently reliable, in advance of resentencing under *Booker*.[7] DE #109 (Order) at 16.

---

[7] The Court stated:

> The defendants, pointing out that Mrs. Adkins' statements were not entirely consistent with the reports of certain victims and witnesses, question the reliability of the statements. There was reason to believe, however, that the statements were consistent in important respects and that a police investigation had corroborated portions of them. Moreover, the statements were voluntary . . .

Adkins again appealed his sentence after resentencing, and the Sixth Circuit affirmed the sentence. DE #134 (Order). Specifically, the Sixth Circuit found that judicial fact finding at sentencing does not violate the Sixth Amendment, so long as the sentencing court does not deem the guideline calculations mandatory. *Id.* at 5. Other than allegations about the unreliability of his wife's statements, Adkins's Motion does little more than recount sentencing testimony at length. Although Adkins does identify discrepancies in Jane Adkins's statements, the Sixth Circuit upheld the findings related to his sentence on direct appeal. DE #134 (Order). Thus, Movant cannot relitigate this issue in a § 2255 motion. *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996) (holding that absent an intervening change in the law, an issue fully and fairly presented on direct appeals cannot be relitigated in a § 2255 motion). Adkins's due process claims fails.

*3. Judicial Bias Claim*

As a third ground for relief, Adkins states that his sentence resulted from improper judicial bias. DE #148 (Motion to Vacate) at 7. He argues that he was resentenced by the original sentencing judge, who made comments unwarranted by the facts, and his sentence was thus a product of bias. *Id.* Adkins further alleges that the judge made an unsupported upward departure. *Id.* Adkins submits five exhibits in support of his arguments.[8] DE ##148-3, 148-4, 148-5, 148-6,

---

and were plainly against Mrs. Adkins' interest. It seems to us, therefore, that the statements were sufficiently reliable.

DE #109 (Order) at 16.

[8] Exhibit A is a 2005 Order from the Boone Circuit Court granting Defendant's motion to dismiss the case with prejudice. DE #148-3 (Boone Circuit Court Order). Exhibit B is a 2008 letter from Petitioner to the Boyle County Attorney, which, per a clerk's notation, indicates that there are no untried indictments against him. DE #148-4 (Letter to Boyle County Attorney). Exhibit C is computer screen shots showing that the prosecutor dropped the charges of first degree sodomy and kidnapping against Petitioner in Jessamine County. DE #148-5 (Computer Screen Shot). Exhibit D is a letter from the Mercer County Attorney's office stating there are no outstanding or pending summons, warrants, or indictments against the Petitioner. DE #148-6 (Letter from Mercer County Attorney). Exhibit E is a 2008 letter from Petitioner to the Scott

and 148-7 (Exhibits). Movant suggests that the information contained in these exhibits was not considered at trial, during his appeals, or at re-sentencing.[9]

Adkins procedurally defaulted his claim. Adkins's Motion admits that he did not raise his judicial bias claim on direct appeal, DE #148 (Motion) at 7 ("Constitutional issues best raised in Habeas Corpus Petition."), and again, a § 2255 Motion does not substitute for a direct appeal. Further, Adkins does not argue adequate cause for his default and prejudice, nor does he argue actual innocence.

Regardless of the procedural default, Adkins fails to properly establish grounds for a claim of judicial bias. A due process claim of judicial bias requires a defendant to show actual bias or that "'an appearance of bias created a conclusive presumption of actual bias.'" *Getsy v. Mitchell*, 456 F.3d 575 (6th Cir. 2006) (citing *United States v. Lowe*, 106 F.3d 1498, 1504 (10th Cir. 1997)). Movant merely alleges that the possibility of bias existed because he was resentenced by the same judge. DE #148-2 (Brief). Adkins does not identify any specific comments or statements made by District Judge Forester that would indicate bias. Again, although the judicial bias claim was not before the Sixth Circuit, that court upheld the resentence on direct appeal. Without any more than speculation, Adkins cannot meet his burden of showing either actual bias or an appearance of bias. The Court agrees with the United States that Movant's allegations of judicial bias appear to be based solely on his unhappiness with court rulings. DE #160 (Response) at 7. Therefore, Adkins is not entitled to § 2255 relief on judicial

_____

County District Attorney, which, per a court clerk's notation, indicates that there are no untried indictments against him. DE #148-7 (Letter to Scott County District Attorney). These show conclusion of relevant state charges.

[9] At the time of sentencing, Adkins faced active charges in Jessamine County, Kentucky. Adkins was sentenced, and judgment was entered against him, on May 24, 2004. According to Exhibit C, the computer screen shot, the Jessamine County charges of first-degree sodomy and kidnapping were not dismissed by the prosecutor until November 9, 2004. DE #148-5 (Computer Screen Shot). Thus, the charges were still pending at the time of his original sentencing.

bias grounds. To the extent Judge Forester made remarks that Adkins finds displeasing, such remarks simply flow from the record in this case. Finally, the resentencing was simply a *Booker* exercise to ensure that Judge Forester had not felt bound by the Guidelines. He plainly did not, and no improper bias appears.

B. Ineffective Assistance of Counsel

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland*, 104 S. Ct. 2052, 2064 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-2065. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069.

12

Adkins's Motion alleges that trial counsel was ineffective for (1) failing to call alleged victims for impeachment purposes, DE #148 (Motion to Vacate) at 8; (2) failing to challenge the indictment and sentence on multiplicity grounds, DE #151 (Motion to Amend and Supplement) at 3; and (3) failing challenge the receipt and possession counts as violative of double jeopardy, *id.* at 8. None of Adkins's theories has merit.

*1. Failure to Call Alleged Victims*

In his original Motion to Vacate, Adkins claims that he was ineffectively assisted by counsel because his attorney failed to call alleged victims for impeachment purposes. DE #148 (Motion to Vacate) at 8. Movant's memorandum alleges a variety of general complaints against counsel's performance, including failure to interview and unrealistic expectations, DE #148-2 (Brief) at 14-15, but Adkins never asserts a right to call alleged victims nor provides the information to which they would have testified. Further, he never specifically identifies what "erroneous and unfounded" allegations the witnesses could have impeached. *Strickland* places the burden on Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 104 S. Ct. at 2066. Mere allegations do not overcome *Strickland*'s deferential standard of review.

Adkins also makes generic statements about counsel's failure to call witnesses. Courts are disinclined to credit allegations of missing testimony because the "allegations of what a witness would have testified are largely speculative." *Sayre v. Anderson*, 238 F.3d 631 (5th Cir. 2001). Again, Adkins bears the burden here. *Strickland*, 104 S. Ct. at 2066. The record shows active pre-trial motion practice and cross-examination of all prosecution witnesses at trial and sentencing. Conclusory statements about counsel's failure to call witnesses or present information do not suffice to meet Adkins's burden under *Strickland*. Because Adkins did not

detail who counsel should have called or what information would have been provided in the testimony, the Court cannot evaluate counsel's alleged deficiencies.

Adkins's original memorandum also alleges that counsel was "either ill prepared or unrealistic" in explaining to the Movant that *United States v. Zimmerman*, 277 F.3d 426 (3d Cir. 2002), provided possible grounds for suppression. In response, the United States argues that counsel was not ineffective just because counsel's hopes/expectations were not realized. DE #160 (Response). Adkins alleges no facts indicating that relying on *Zimmerman* at a suppression hearing was not sound trial strategy.[10] Simply because Adkins is unsatisfied with the outcome does not mean that counsel was ineffective. *Strickland* requires deferential judicial scrutiny of counsel's performance, in part, because "[it] is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 104 S. Ct. at 2065. The Court will not second-guess trial counsel's methods here.

The real complaint is that Adkins would have accepted a 20 year plea deal instead of proceeding to a suppression effort and trial had he been fully apprised of the cost/benefit of the strategy. Adkins asserts that receiving 75 years after trial, when he could have pled guilty and received 20 years, establishes a basis for a hearing and ultimate relief. While more details from

---

[10] *Zimmerman* struck down a search of Zimmerman's residence, finding the officer's affidavit "so lacked the requisite indicia of probable cause that it was 'entirely unreasonably' for an official to believe to the contrary." *Zimmerman*, 277 F.3d at 437. In the instant case, defense counsel attacked the affidavit nearly line by line. Further, although counsel cites to and analogizes with *Zimmerman*, Defendant's suppression motion clearly does not rely solely on the case. DE #25 (Motion to Suppress). District Judge Forester found that the affidavit contained "an abundance of evidence linking Terry to several instances of child molestation" and "direct evidence supporting the conclusion that Terry was likely to possess child pornography." DE #38 (Opinion and Order) at 6-7. Further, "[a]ll of this information, when combined with the testimony of Agent Clemente linking Terry's characteristics with those of preferential child offenders results in clear probable cause for the issuance of a search warrant with respect to Terry's home." *Id.* at 7. The court applied the same analysis to uphold the search of Movant's car, finding further that *Leon* would apply to save either search. *Id.* at 7-8.

the United States about plea negotiations would have been helpful here, the Court sees no need for a hearing.  Adkins's own briefs show he held the ultimate decision on the strategy and he well knew the *Zimmerman* foray offered only a *chance* at suppression and acquittal.   DE #148-2 (Brief) at 14  (acknowledging that counsel  informed him that, based on *Zimmerman*, the court "may possibly rule in his favor"); DE #162 (Reply) at 18 (acknowledging awareness of plea offer prior to suppression hearing and that "decision to plead guilty . . . rests with the defendant").  Nothing suggests that this complaint about counsel is anything more than sour grapes about a client-endorsed strategy that did not pan out.

Movant also alleges that counsel erred at resentencing by failing to disclose that state charges pending at the original sentencing had been dismissed with prejudice or discharged by state or county officials. DE #148-2 (Brief) at 15. The Government responds that the district court exercised compassion by not imposing a life sentence, and that there is no evidence that Adkins's sentence would have been different had counsel so disclosed the status of the state charges. DE #160 (Response) at 8. Adkins does not articulate any specific reason to believe that his sentence would have been less had counsel disclosed and, in fact, the record demonstrates the weight of the evidence against Adkins, including the Presentence Investigation Report's recommendation for a base offense level increase based on the probation officer's findings in that report. In considering the § 3553(a) factors, Judge Forester stated that he could not "think of anything any more horrendous than [Adkins's crime]," and that "the public needs to be protected from Mr. Adkins, and . . . all the little children everywhere need to be protected from Mr. Adkins." DE #128 (Resentencing Transcript) at 13. The *Booker* resentencing discloses no reliance by the district judge on pending state charges. Dismissal does not signify a resolution on the merits. Adkins fails to meet his burden under *Strickland*.

15

Adkins finally alleges that a "gross error occurred" when the Government read a victim impact statement from one of the victim's relatives, arguing that error could have been prevented had he been effectively assisted. DE #148-2 (Brief) at 15. Adkins asserts no authority prohibiting the introduction of such a statement, and again, a sentencing court has broad discretion over the sources and types of information it receives in calculating a defendant's sentence. *United States v. Rhodes*, 410 Fed. App'x 856, 862 (6th Cir. 2010) (upholding the introduction of statements on the appropriate sentence by the victim and his attorney). The victim statement was evidence properly received by the court, and Adkins was not ineffectively assisted when counsel failed to object to the letter.

None of Adkins's many allegations of ineffective assistance of counsel meets the *Strickland* standard. Adkins does not articulate any facts indicating that trial counsel fell below an objective standard of reasoned judgment. Adkins may be unhappy with his sentence, but he was effectively assisted by counsel and is not entitled to relief under § 2255.

*2. Failure to Challenge Indictment and Sentence on Multiplicity Grounds*

Adkins's Consolidated Motion to Amend and Supplement § 2255 Motion alleges additional ineffective assistance of counsel claims. DE #151 (Consolidated Motion). The Court granted Defendant's Motion on December 30, 2009, deeming the original Motion amended and supplemented. DE #153 (Memorandum Order). In October 2011, the Court ordered additional briefing on the issues raised, DE #172 (Order), and the United States responded, DE #173 (Response). Movant submitted a Sur Reply. DE #177 (Sur Reply). Thus, the issues are fully briefed and properly before the Court.

Adkins asserts that he was ineffectively assisted because counsel did not challenge the indictment or the sentence on multiplicity grounds. DE #151 (Consolidated Motion). Adkins was

16

indicted for, and found guilty of, 99 separate counts of receipt of child pornography. DE #8 (Indictment), #99 (Judgment), #121 (Amended Judgment). Adkins argues that the record is not clear that each charged count was linked to a separate receipt instance. *Id.* at 8. Thus, according to Movant, the issue must be one of statutory interpretation and the court should hold an evidentiary hearing to clarify the record. *Id.*

"An indictment is multiplicitious if it charges a single offense in more than one count." *United States v. Schaffner*, 715 F.2d 1099, 1102 (6th Cir. 1983) (citing *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981). A multiplicitous indictment violates Double Jeopardy by subjecting the Defendant to punishment for the same crime more than once. *See United States v. Menichino*, 32 F.3d 569, at *2 (6th Cir. 1994) (table). Here, different depictions downloaded on different days do not concern a single act or transaction and, thus, they do not implicate double jeopardy concerns. *United States v. Huber*, 414 Fed. App'x 826, 827 (6th Cir. 2011). However, the law on whether receipt of multiple images on any one day or at one time is properly one or divisible criminal acts has not been squarely resolved. *See United States v. Polouizzi*, 564 F.3d 142 (2d Cir. 2009) (discussing the issue in dicta); *United States v. Pires*, 642 F.3d 1, 15-16 (1st Cir. 2011) (affirming *Polouizzi* in dicta). Adkins did not raise this claim on direct appeal, making it only in the instant Motion in the context of a claim of ineffective assistance of counsel.

Adkins primarily argues that he was ineffectively assisted because counsel did not object to the 99 counts of intentional receipt under 18 U.S.C. § 2252(a)(2). Movant states that "during the bench trial it is unclear whether the government specifically linked each count to separate dates and times, or whether a majority of the counts were predicated on transactions that occurred on the same day." DE #151 (Consolidated Motion) at 8. The United States argues that

"[e]ach count of Adkins's conviction is supported by a set of facts that demonstrate each is a distinct transaction or conduct for which Adkins was properly convicted and sentenced." DE #173 (Response) at 4. Adkins requests an evidentiary hearing to address the "overlapping facts" that underpin the ninety-nine convictions of receipt. DE #177 (Sur Reply) at 2. Movant does not, however, detail his specific argument as to any particular counts or articulate a prejudicial result. Adkins faces a high burden under *Strickland*, and he again fails to meet that burden here.

Counsel's deficiencies must have fallen below the professional norm/standard at the time, and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 104 S. Ct. at 2065. ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). Movant does not assert any particular authority for his claim that counsel fell below an objective standard of reasonableness under **then-prevailing** professional norms in failing to object to the Indictment on multiplicity grounds. The bulk of Adkins's argument is directed at the merits of his claim, but the authority Adkins cites was decided years after his sentencing and resentencing. Counsel is not expected to predict perfectly the future of constitutional law, and his failure to object on multiplicity grounds was not ineffective.

Adkins's claim may have had colorable merit on direct appeal. The Indictment identifies counts two through one hundred by a file name, a date and time of download, and a law-enforcement generated description. DE #8 (Indictment). A few dates and times overlap, but each image is identified by a unique name. *Polouizzi* only addressed the issue in dicta, indicating that to support separate receipt convictions from images downloaded on the same day, the factfinder would need to find that the defendant engaged in separate and distinct transfers, not a single

simultaneous transfer. *Polouizzi*, 564 F3.d at 158. The First Circuit has also addressed the issue in dicta. *Pires*, 642 F.3d at 15-16. *Pires* did not decide the merits of the defendant's claim but affirmed *Polouizzi*'s holding that "the allowable unit of prosecution for . . . attempted receipt of [material containing child pornography], on a single day and without proof of multiple transactions, is one, not two." *Id.* at 15. Adkins does not identify which counts allegedly were multiplicitous.[11] The Indictment shows that several images were downloaded or altered on the same date and time. DE #8 (Indictment) (indicating overlap between counts 3 and 4; 6 and 7; and 13 and 14).

The trial testimony suggests that the date/time stamp reflected either a download or file-altered date for the matter.  DE #108 (Trial Transcript) at 24 ("created date or the modified date").  The computer had time and date accuracy issues, meaning the stamp may not be accurate or consistent.  *Id.* at 54.  Adkins succeeds only in suggesting the questions, however, and he does not point to or offer specific and supportive proof.  The Court must assess counsel's conduct under the law as it existed in 2004, and Adkins offers no authority establishing that failure to attack the counts as multiplicitous was unreasonable at that time.  *Baker v. Voorhies*, 392 Fed. App'x 393, 400 (6th Cir. 2010) ("Because [the court] must assess the adequacy of . . .  counsel's performance based on 'counsel's perspective at the time,' rather than 'in the harsh light of hindsight,' subsequent legal developments are relevant only if those developments were '*clearly* foreshadowed by existing decisions.' Outside of this narrow exception, 'counsel is not ineffective for failing to predict the development of the law.'" (citations omitted)). The Sixth

---

[11] Adkins argues that he has never been provided with a copy of the Trial Transcript. DE #177 (Sur Reply) at 8. The record reflects that Adkins requested transcripts of all proceedings (DE #146), which the Court subsequently denied (DE #168). The Court found that Adkins failed to make the requisite showing under 28 U.S.C. § 753(f). Adkins did not object or refile the motion.

Circuit still has no decision that conclusively addresses this topic, and Adkins's cited cases all post-date the trial of this case.

The Court also questions any prejudice showing, even if any counts were multiplicitous. The Court intentionally crafted a sentence that would yield a total term of 900 months.  Judge Forester departed upward to reach a 360-life range in response to the Government's efforts, which sought to assure that Adkins's "feet should never hit the ground again."  DE #107 (Sentencing Transcript) at 88.  This ultimate sentence resulted from a blend of consecutive and concurrent sentences, producing finally a number within the final guidelines range.  The District Court did not differentiate between the merits of particular counts in making this allocation, and there was no depiction-specific sentencing reference that would tie the allocation to the merits of individually dated downloads.  Thus, even if Adkins were to show that one or more of the individual counts should merge as multiplicitous, there is no reason to think the ultimate result would in any way have been different.  After all,  only a small portion of the depictions fall even on the same date.  This, too, is fatal to any *Strickland* effort.

Because Adkins only raises his claim within the realm of ineffective assistance of counsel, and on this record, the Court cannot label Adkins's trial counsel deficient for failing to object to the indictment or the judgment as multiplicitious. Adkins does not allege which counts were multiplicitous, nor does he demonstrate proof of a single transaction. He further fails to cite to any authority showing that counsel fell below an objective standard of reasonableness for failing to object at trial or on appeal. Adkins fails to meet his burden under *Strickland*.

*3. Failure to Challenge Receipt and Possession Counts Under Double Jeopardy*

Adkins further alleges that he was ineffectively assisted because trial counsel did not object to the possession and receipt counts, which charged him with 1 count of possession of

matters containing child pornography under 18 U.S.C. § 2252(a)(4)(B) and 99 counts of receipt of child pornography under 18 U.S.C. § 2252(a)(2). DE #151 (Consolidated Motion) at 8. Adkins asserts that his convictions for both possession and receipt violate double jeopardy, and that trial counsel was ineffective for failing to object to the Indictment on double jeopardy grounds. *Id.* In response, the Government argues that with respect to count 101, "additional and different images were possessed, requiring the proof of facts not relevant to prove counts 2-100." DE #173 (Response) at 3. Adkins replies that the record is not conclusive on the issue. DE #177 (Sur Reply) at 8.

The law does now treat possession of child pornography as a lesser included offense of receipt of that same pornography. *United States v. Ehle*, 640 F.3d 689, 694-95 (6th Cir. 2011). Here, however, the specific indicted images (Counts 2-100) were but a "representative sample of the images taken from the hard drive." DE #108 (Trial Transcript) at 22. The District Judge specifically stated: "Special Agent Vito has indicated that there were thousands of child pornography images and that the images [2-100] . . . were a representative sample of the thousands of images that he saw." *Id.* at 102. The record conclusively shows that the possession scope exceeded the particular images charged relative to receipt.

Additionally, and as to prejudice, the Court notes that the full possession term runs concurrent with other terms in the Judgment. Thus, the ultimate imprisonment term is not enlarged by the possession offense. This raises great doubt about whether any constitutionally cognizable prejudice from the possession conviction inheres, again undermining any *Strickland* theory. *Green v. United States*, 65 F.3d 546 (6th Cir. 1995) (finding that defendant could not show *Strickland* prejudice when appealing a shorter sentence being served concurrent with a longer sentence).

21

<u>C. Evidentiary Hearing</u>

Adkins requests an evidentiary under 28 U.S.C. § 2255. DE #151 (Consolidated Motion) at 12; DE #177 (Sur Reply) at 1. The District Court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record, the Court finds that the motion and case files and records unquestionably demonstrate that Adkins is not entitled to relief. He did not meet his burden with respect to the ineffective assistance arguments, and he procedurally defaulted the remainder of the claims.

## IV. Certificate of Appealability

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 120 S. Ct. at 1604.

Defendant has not made a "substantial showing" as to any claimed denial of rights.  As for the procedurally barred claims, Adkins has not provided any evidence to undermine the reasonableness of the procedural analysis.  Accordingly, the Court recommends that the District Court deny a Certificate of Appealability.

**V. Recommendation**

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Adkins's motion for § 2255 relief. The Court also recommends that the District Court **DENY** a Certificate of Appealability and **DENY** Movant's request for an evidentiary hearing.

*   *   *   *   *

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen days after being served with a copy of this  decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 22nd day of February, 2012.



**Signed By:**

*Robert E. Wier*

**United States Magistrate Judge**

23